**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robin Kay Stigleman, | No. CV-17-00522-PHX-JZB |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Robin Kay Stigleman seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her disability insurance benefits and supplemental security income under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is not supported by substantial evidence and is based on legal error, the Commissioner's decision will be vacated and the matter remanded for further administrative proceedings.

**I.      Background.**

Plaintiff applied for disability insurance benefits on July 30, 2013, and for supplemental security income on October 29, 2013, alleging disability beginning December 21, 2012. On November 10, 2015, she appeared with her attorney and testified at a hearing before the ALJ. A vocational expert also testified. On December 9, 2015, the ALJ issued a decision that Plaintiff was not disabled within the meaning of the Social

Security Act. The Appeals Council denied Plaintiff's request for review of the hearing decision, making the ALJ's decision the Commissioner's final decision.

## II. Legal Standard.

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

Harmless error principles apply in the Social Security Act context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless if there remains substantial evidence supporting the ALJ's decision and the error does not affect the ultimate nondisability determination. *Id.* The claimant usually bears the burden of showing that an error is harmful. *Id.* at 1111.

The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). In reviewing the ALJ's reasoning, the court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

## III. The ALJ's Five-Step Evaluation Process.

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the

burden of proof on the first four steps, but at step five, the burden shifts to the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's RFC, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

At step one, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2015, and that she has not engaged in substantial gainful activity since December 21, 2012. At step two, the ALJ found that Plaintiff has the following severe impairments: "reflex sympathetic dystrophy (complex regional pain syndrome), depression and anxiety (20 CFR 404.1520(c) and 416.920(c))." (AR 14.) At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. At step four, the ALJ found that Plaintiff has the RFC to perform:

> light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can stand and/or walk for about six hours in an eight-hour workday, can sit for more than six hours on a sustained basis in an eight-hour workday and can occasionally climb ladders, ropes and scaffolds. She can frequently

> climb ramps and stairs, frequently balance, stoop, kneel and crouch. The claimant can occasionally crawl. The claimant is able to carry out simple instructions, follow simple work-like procedures, and make simple work-related decisions. The claimant can perform at a consistent pace and maintain a regular 40-hour work schedule.

(AR 17.) At step four, the ALJ found that Plaintiff is capable of performing her past relevant work as a receptionist, parcel post clerk, insurance checker, and cashier. Accordingly, the ALJ determined Plaintiff "has not been under a disability, as defined in the Social Security Act, from December 21, 2012 through the date of [the ALJ's] decision." (AR 24.)

**IV. Analysis.**

Plaintiff argues the ALJ's decision is defective for two reasons: (1) the ALJ erred by rejecting the assessments of treating physicians Benet R. Press, M.D., and Jeffrey T. Bucholz, D.O., and (2) the ALJ erred by rejecting Plaintiff's symptom testimony in the absence of specific, clear, and convincing reasons based on substantial evidence. (Doc. 18 at 1-2.)

**A. Weighing of Medical Source Evidence.**

Plaintiff argues that the ALJ improperly weighed the medical opinions of the following medical sources: Drs. Benet R. Press and Jeffrey T. Bucholz. The Court will address the ALJ's treatment of each opinion below.

**1. Legal Standard.**

The Ninth Circuit distinguishes between the opinions of treating physicians, examining physicians, and non-examining physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, an ALJ should give greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than to one of a non-examining physician. *See Andrews v. Shalala*, 53 F.3d 1035, 1040-41 (9th Cir. 1995); *see also* 20 C.F.R. § 404.1527(c)(2)-(6) (listing factors to be considered when evaluating opinion evidence, including length of examining or treating relationship, frequency of examination, consistency with the record, and support from objective evidence). If it is not contradicted by another doctor's opinion, the opinion of a treating

or examining physician can be rejected only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830 (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). A contradicted opinion of a treating or examining physician "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews*, 53 F.3d at 1043).

An ALJ can meet the "specific and legitimate reasons" standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986). But "[t]he ALJ must do more than offer [her] conclusions. [She] must set forth [her] own interpretations and explain why they, rather than the doctors', are correct." *Embrey*, 849 F.2d at 421-22. The Commissioner is responsible for determining whether a claimant meets the statutory definition of disability and does not give significance to a statement by a medical source that the claimant is "disabled" or "unable to work." 20 C.F.R. § 416.927(d).

### 2. Benet R. Press, M.D.

Dr. Press is Plaintiff's treating psychiatrist. In June 2014, Dr. Press completed an assessment of Plaintiff's ability to work, stating that his answers were "based on [Plaintiff's] Psychiatric problems ONLY." (AR 577.) In his assessment, Dr. Press opines that Plaintiff would be "off task" in a work environment 20% of the time; Plaintiff would be absent from work one day a month as a result of her mental impairments; Plaintiff would be unable to complete an 8-hour work day on one day per month as a result of her mental impairments; and Plaintiff, on a sustained basis, would be 70% as efficient as an average worker at performing a job 8 hours per day for 5 days a week. (AR 577.)

In May 2015, Dr. Press completed a supplemental questionnaire as to residual functional capacity. (AR 746-47.) Therein, Dr. Press opines that Plaintiff has no limitations in carrying out short, simple instructions, making judgments on simple work-related decisions, and interacting appropriately with the public or supervisors. (AR 746.) But, Dr. Press finds that Plaintiff would be "off task" ten percent of the time in

understanding and remembering short simple or detailed instructions, in her ability to respond appropriately to work pressures in a usual work setting, and to changes in a routine work setting. (AR 746.) On the next page of the report, Dr. Press opines that Plaintiff would be "off task" 25% of a typical day, absent from work two days in an average month due to psychiatric problems, incapable of completing an eight-hour work day two days a month, and 70% as efficient at performing her job duties on a sustained basis as an average worker. (AR 747.)

Dr. Press's medical opinion was contradicted by the opinion of the consulting physicians at the initial and reconsideration levels, Drs. Sheri Tomak, Psy. D. and Margaret Friedman, Psy. D. (AR 21.) Both Dr. Tomak and Dr. Friedman conclude that the Plaintiff can carry out simple instructions, follow simple work-like procedures, and make simple work-related decisions. Drs. Tomak and Friedman opine Plaintiff has greater abilities than those identified in Dr. Press's opinion. The ALJ can therefore discount Dr. Press's opinion for specific and legitimate reasons supported by substantial evidence. *Lester*, 81 F.3d at 830-31.

The ALJ provides the following analysis regarding Dr. Press's June 2014 opinion:

> Little weight is afforded to the opinion of the claimant's treating physician Benet R. Press, M.D. (7F). The opinion is on a pre-printed form and suggests the claimant would be "off-task' 20% of the time, would miss one day of work or be unable to complete one day of work per month due to her impairments, and would be 70% efficient compared to other workers (Id.). The doctor wrote the limitations were due to psychiatric problems only and was completed in June 2014 (Id.). The undersigned finds the opinion is inconsistent with and unsupported by the claimant's treatment history. The claimant does not report problems with activities of daily living due to cognitive impairment, has never been hospitalized because of mental illness, has routinely performed well on mental status examinations with providers, has maintained a relationship with a boyfriend during the disability period and did not display evidence of impairment to support the limitations at her hearing, as she was alert and responsive (See Exhibits 1F:55, 62, 65, 69, 72; 6F:6; 11F:7, 12, 13; 14F:6[,] 15F). Based on the foregoing, little weight is afforded to the opinion of Dr. Press.

(AR 22.) The ALJ provides the following additional analysis as to Dr. Press's May 2015 opinion:

> Little weight is afforded to the opinion of Benet R. Press, M.D. offered in May 2015 (13F). The doctor's opinion was provided on a check-off form

and noted the claimant had moderate difficulties in understanding and remembering short, simple instructions and understanding and remembering detailed instructions (Id.). The doctor also concluded the claimant had moderate difficulties in responding appropriately to work setting pressures in a usual work setting and responding appropriately to changes in a routine work setting (Id.). The doctor went on to change his opinion from that offered in Exhibit 7F. The doctor was now concluding the claimant would be "off-task" 25% percent of the time and would miss two days of work per month and/or be unable to complete two or more days of work per month (Id.). The doctor did however, remain consistent in concluding the claimant could be expected to be 70% efficient compared to an average worker (Id.). As with the doctor's opinion in Exhibit 7F, the undersigned finds the conclusions are unsupported and inconsistent with the evidence. The statement is a "check-off" report that does not contain any explanation of the bases for the conclusions and as such the undersigned may permissibly reject the opinion. *Crane v. Shalala*, 76 F.3d. 251, 253 (9th Cir. 1996); see also *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001)("[T]he regulation s give more weight to opinions that are explained than to those that are not"). Further, the claimant's treatment history as identified in this decision and in reference to the opinion at Exhibit 7F above, do not support the limitations which are conclusory and do not provide a function-by-function analysis of the claimant's abilities. Based on the foregoing, the undersigned affords little weight to the opinion of Dr. Press at Exhibit 13F.

(AR 22.)

In short, the ALJ provides six reasons for discounting Dr. Press's medical opinions: (1) they are contained on checked-box forms; (2) they are "inconsistent with and unsupported by the [Plaintiff's] treatment history", (3) they are not supported by Plaintiff's reported activities of daily living; (4) Plaintiff was alert and responsive at the hearing; (5) Dr. Press's opinions are internally inconsistent; (6) the limitations provided in Dr. Press's opinions "are conclusory and do not provide a function-by-function analysis of [Plaintiff's] abilities." (AR 22.) The Court will address each reason below.

### a. Checked-box forms.

The ALJ's first reason is for discounting Dr. Press's opinions is that they are contained on a checked-box form. But an ALJ may not reject a treating physician's opinion simply because it is a questionnaire; an ALJ may only reject such an opinion for specific, legitimate reasons. *See Lester*, 81 F.3d at 830-31. "[T]here is no authority that a 'check-the-box' form is any less reliable than any other type of form; indeed, agency physicians routinely use these types of forms to assess the intensity, persistence, or

limiting effects of impairments." *Trevizo v. Berryhill*, 871 F.3d 664, 677 (9th Cir. 2017). Accordingly, the ALJ's first reason for discounting Dr. Press's opinion is not legitimate.

### b. Unsupported by Plaintiff's Treatment History.

The ALJ's second reason for discounting the opinions of Dr. Press is that they are "inconsistent with and unsupported by the [Plaintiff's] treatment history." (AR 22.) Specifically, the ALJ identifies that Plaintiff "has never been hospitalized because of mental illness, [and] has routinely performed well on mental status examinations with providers[.]" (AR 22.)

"An ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole,[] or by objective medical findings[.]" *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1195 (9th Cir. 2004). But "treatment records must be viewed in light of the overall diagnostic record." *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (finding that an ALJ erred when he relied on a physicians' evaluations of a claimant's cognitive functioning to support the ALJ's conclusion that the claimant's testimony regarding nightmares, insomnia, social anxiety, and depression was inconsistent with the treatment record).

Here, the ALJ finds Plaintiff to have "the following severe impairments: reflex sympathetic dystrophy (complex regional pain syndrome), depression and anxiety[.]" (AR 14.) Dr. Press consistently diagnosed Plaintiff as having a "Mood Disorder NOS" under diagnostic code 296.90. (*See* AR 356, 376, 394, 397, 401, 404, 407, 414.) "[O]bservations of cognitive functioning during therapy sessions do not contradict [] reported symptoms of depression and social anxiety." *Ghanim*, 763 F.3d at 1164. The ALJ points to no inconsistent treatment record that would undermine Dr. Press's opinions of Plaintiff's functional limitations based on her psychiatric diagnoses (AR 577, 746-47). (*See* AR 22.)

The Court finds that the ALJ's second reason for discounting Dr. Press's medical opinion is not specific.

### c. Activities of Daily Living.

The ALJ's third reason for discounting the opinion of Dr. Press is that Plaintiff "does not report problems with activities of daily living due cognitive impairment, . . . [and] has maintained a relationship with a boyfriend during the disability period[.]" (AR 22.)

"Several courts, including this one, have recognized that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citing *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir.1987) (noting that a disability claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits)). *See also Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability").

The ALJ does not identify any specific daily activity that is inconsistent with Dr. Press's opinion. Nor does the ALJ discuss or make any finding regarding the amount of time per day that Plaintiff spends engaged in such daily activities. Therefore, the Court finds the ALJ's third reason for discounting Dr. Press's opinions is not supported by substantial evidence.

### d. Plaintiff's appearance at the hearing.

The ALJ's fourth reason for discounting Dr. Press's opinions is that, based on the ALJ's own observations, Plaintiff was alert and responsive at the hearing. (AR 22.) The ALJ does not elaborate on this reasoning, and does not provide even a single sentence of explanation as to how the Plaintiff being alert and responsive at the administrative hearing speaks to discredit the medical opinion of Dr. Press. Accordingly, the Court finds the ALJ's fourth reason is conclusory, and thus insufficiently specific.

### e. Internal Inconsistency.

The ALJ's fifth reason for discounting Dr. Press's opinions is that they are internally inconsistent. (AR 22.) Specifically, the ALJ states that, in the May 2015 opinion, Dr. Press "change[d] his opinion from that offered in [June 2014.] [Dr. Press]

was now concluding that [Plaintiff] would be 'off-task' 25% of the time and would miss two or more days of work per month." (AR 22.)

Internal inconsistencies between a physician's reports constitute relevant evidence. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999). But, "[c]onsistency does not require similarity in findings over time despite a claimant's evolving medical status." *Orn v. Astrue*, 495 F.3d 625, 634 (9th Cir. 2007).

In this instance, Dr. Press's opinions were gathered nearly a full year apart. (*See* AR 577; AR 746-47.) Even so, the opinions are nearly identical. (*Id.*) In his second opinion, Dr. Press states that Plaintiff would be off-task 25% of the time, up just 5% from his first report, and states that Plaintiff would miss an average of two days a month based on her psychiatric diagnosis, up from just one in his first report. (*Id.*) The Court finds that Dr. Press's opinions cannot reasonably be held to be internally inconsistent. Accordingly, this reason is not legitimate for discounting his opinions.

### f. Dr. Press's findings are conclusory and do not provide a function-by-function analysis.

The ALJ's sixth reason for discounting Dr. Press's opinions is because his recommended limitations "are conclusory and do not provide a function-by-function analysis of the claimant's abilities." (AR 22.) The ALJ does not explain what functional findings are missing from Dr. Press's opinions. What is more, the ALJ ignores the fact that the record is replete with treatment notes from Dr. Press detailing Plaintiff's symptoms and providing a basis for Dr. Press's opinions. (*See, e.g.*, AR 356-414.) The Court finds that the ALJ's sixth reason for discounting Dr. Press's opinions is not specific or legitimate.

### g. Summary.

The ALJ has failed to provide specific and legitimate reasons for discounting the opinions of Dr. Press. Accordingly, the Court finds that the ALJ committed legal error by doing so.

### 3. Jeffrey T. Bucholz, D.O.

Dr. Bucholz is Plaintiff's treating physician from The Pain Center of Arizona. On October 16, 2015, Dr. Bucholz wrote a letter stating that:

> [Plaintiff] is a well known and established patient in our practice who I have been treating for right lower extremity CRPS. I feel that because of the patient's CRPS to help relieve her pain and potentially improve circulation during prolonged periods of sitting that she should have her foot elevated or raised as close to her heart level as possible.

(AR 1082.) The ALJ afforded Dr. Bucholz opinion, affording it "little weight." (AR 23.) Specifically, the ALJ stated that:

> The undersigned finds the opinion is inconsistent with and unsupported by the doctor's own records which noted the claimant had normal gait and station as well as with the fact that the claimant does not require a cane for ambulation and did not exhibit clinical indications of a condition that would require such a limitation during the consultative examination (See Exhibit15F: 3 and 3F).

(AR 23.) In short, the ALJ provides just one reason for discounting Dr. Bucholz's opinion: that it "is inconsistent with and unsupported by the doctor's own records." (AR. 23.)

The ALJ's provided reason, without further explanation, is not sufficiently specific to discount an examining physician's opinion. *Embrey*, 849 F.2d at 421-22 ("[t]he ALJ must do more than offer [her] conclusions. [She] must set forth [her] own interpretations and explain why they, rather than the doctors', are correct."). Here, the ALJ does not identify what inconsistencies exist between Dr. Bucholz's opinion and the record, nor does the ALJ explain why those inconsistencies support his non-credibility determination. Accordingly, the Court finds that the ALJ has failed to provide a specific and legitimate reason for discounting the opinion of Dr. Bucholz.

### B. The ALJ Did Not Err in Evaluating Plaintiff's Credibility.

In evaluating the credibility of a claimant's testimony regarding subjective pain or other symptoms, the ALJ is required to engage in a two-step analysis: (1) determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of the pain or other symptoms alleged;

and, if so with no evidence of malingering, (2) reject the claimant's testimony about the severity of the symptoms only by giving specific, clear, and convincing reasons for the rejection. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

First, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. Second, the ALJ found Plaintiff's statements regarding the intensity, persistence, and limiting effects of the symptoms not credible to the extent they are inconsistent with the ALJ's residual functional capacity assessment. In other words, the ALJ found Plaintiff's statements not credible to the extent she claims she is unable to perform in a competitive work environment.

At the hearing Plaintiff testified to the following facts. Plaintiff was diagnosed with reflex sympathetic dystrophy, and she has "a lot of pain in [her] lower extrematies" including "shock-like symptoms[,]" "numbness," and "tingling[.]" (AR 48.) She testified that she has "depression and anxiety from the pain." (AR 48.) She asserts that she must elevate her foot when sitting for long periods of time, and that she spends most of a typical day lying down with her foot elevated. (AR 45-46, 49.)

The ALJ gave found that Plaintiff's symptom testimony was not credible, stating the following:

> The claimant's credibility is an additional factor the undersigned must consider when evaluating a claimant's subjective complaints as to their limitations. Credibility analysis is especially important when there is limited objective medical evidence to support a claimant's allegations of disabling mental and/or physical impairments. The undersigned must consider the seven credibility factors at 20 CFR 404.1529(c)(3) and 416.929(c)(3) which in summary are 1) daily activities 2) location, duration, frequency and intensity of pain or other symptoms, 3) precipitating and aggravating factors, 4) effects of medication 5) treatment, 6) other measures used to relieve symptoms and 7) other factors. However, not all seven factors will apply in every case.

> The claimant's statements to medical providers have been used when evaluating her credibility. As an example, the claimant has alleged complete inability to perform work at SGA. Yet in mental health treatment records the claimant has reported that she was going to be volunteering with the Humane Society to gain experience in dog grooming (1F). In February 2015, the claimant was reportedly living with a boyfriend in a house without issue and was able to complete activities of daily living without assistance (16F:2).

(AR 20.) The ALJ's reasoning is insufficient.

The ALJ fails to identify a single specific limitation asserted by Plaintiff that is inconsistent with the record. (*See* AR 20-23.) Instead, the ALJ merely states that Plaintiff's "statements to medical providers have been used when evaluating her credibility," and then notes that Plaintiff had expressed a desire to volunteer with the humane society in dog grooming, and that she had lived with her boyfriend "and was able to complete activities of daily living without assistance." (AR 20.) This analysis is insufficient, and does not satisfy the legal standards set out in *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) (finding an ALJ committed legal error when she "failed to identify the testimony she found not credible, [and] she did not link that testimony to the particular parts of the record supporting her non-credibility determination.").

The Commissioner, in defense of the ALJ's reasoning, puts forward a one-paragraph position that merely recites the ALJ's points and argues that "[e]ven if the consistency of the activities is somewhat equivocal, if the ALJ's judgment is supported by substantial evidence, 'it is not our role to second-guess it." (Doc. 19 at 2 (citing *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).) But the ALJ's lackluster explanation does not cite to any evidence in support, much less substantial evidence. Also, the Commissioner does not cite to a single example of any specific finding in the ALJ's decision that would satisfy the requirements set forth in *Brown-Hunter*, and the Court finds none.

Accordingly, the Court finds the ALJ committed legal error by discounting Plaintiff's symptom testimony, because doing so was not supported by substantial evidence.

### III. Remand.

Where an ALJ fails to provide adequate reasons for rejecting the opinion of a physician, the Court must credit that opinion as true. *Lester*, 81 F.3d at 834. An action should be remanded for an immediate award of benefits when the following three factors

are satisfied: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (citing *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1202 (9th Cir. 2008), *Lingenfelter v. Astrue*, 504 F.3d 1028, 1041 (9th Cir. 2007), *Orn*, 495 F.3d at 640, *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004), and *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). There is "flexibility" which allows "courts to remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1020.

Here, the first two factors are easily satisfied. The record is substantial and further examinations do not appear necessary, and the Court has determined that the ALJ failed to provide legally sufficient reasons for discounting Plaintiff's symptom testimony and the medical opinions of Drs. Press and Bucholz. The third factor is a close question. The Court cannot conclude that the improperly discredited evidence, when taken as true, requires a finding of disability, because the ALJ did not account for the discredited evidence in his RFC determination, and did not reach step 5 to determine if there are other jobs in the economy that Plaintiff is capable of completing.

Even if the third factor is satisfied, a review of the record creates serious doubt that Plaintiff is in fact disabled. Specifically, the record is replete with instances of Plaintiff's improvement with treatment of her pain, which she alleges to be the source of her depression and anxiety. (*See, e.g.*, AR 861 (December 2014, initially reporting 90% relief from a lumbar sympathetic block), AR 853 (January 2015, reporting two weeks of significant relief from her last sympathetic block), AR 845 (February 2015, same), AR 833 (May 2015, reporting 100% relief for two weeks from her sympathetic block).)

Accordingly, the Court will exercise its discretion and remand this case for further

proceedings consistent with this opinion.

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is **vacated** and this case is **remanded** for further proceedings consistent with this opinion. The Clerk shall enter judgment accordingly and **terminate** this case.

Dated this 27th day of March, 2018.

Honorable John Z. Boyle
United States Magistrate Judge